## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBORAH MIECZKOWSKI,** | : | |
| | : | **Civil Action No. 1:07-CV-1102** |
| **Plaintiff** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **YORK CITY SCHOOL** | : | |
| **DISTRICT, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

In this action, Dr. Deborah Mieczkowski ("Plaintiff" or "Dr. Mieczkowski"), a Caucasian woman who served for a short period of time in an executive administrative capacity for the School District of the City of York ("School District"), has sued School District and two of its African American officers, Deloris Penn and Tresa Diggs (collectively, "Defendants"), seeking damages for alleged reverse race discrimination under provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 1981. Plaintiff has also brought claims under 42 U.S.C. § 1983 for alleged violations of her right to equal protection under the Fourteenth Amendment and her right to be free from retaliation for the exercise of her rights under the First Amendment. Finally, Plaintiff has brought a claim for civil conspiracy under Pennsylvania state law.

Now pending before the Court is Defendants' motion for summary judgment on all of Plaintiff's claims. (Doc. 39.) The motion has been fully briefed and is ripe for disposition. Following a review of the briefs, as well as the statement and counterstatement of material facts and the evidence submitted in support thereof, it is recommended that Defendants' motion be granted in its entirety and that judgment be entered in their favor.

## I. BACKGROUND

Dr. Deborah Mieczkowski began working for the School District as the Supervisor of Curriculum in February 2004. (Def. Statement of Material Facts, ¶ 4.) In July 2006, Plaintiff was promoted to the position of Assistant Superintendent of the School District. (Id. ¶ 5.) In connection with her new appointment, Plaintiff executed a contract with the School District that provided Plaintiff with a base salary of $99,000 per year. (Id. ¶ 6.) Plaintiff negotiated her salary with the School District and, in connection with these negotiations, Plaintiff had access to and reviewed salary information for other School District employees, including information related to previous Assistant Superintendents and other administrative employees, which was public information.[1] (Id. ¶¶ 8, 9.)

---

[1] In her counterstatement of material facts, Plaintiff attempts to create some ambiguity as to when she became aware of the allegedly unequal pay that she received relative to both previous Assistant Superintendents and employees who were subordinate to her. (Pl.

At no time during her contract negotiations, or during her work with the School District, did Plaintiff ever complain formally or informally that she was being paid unequally or unfairly.[2]  (Id. ¶ 10.)  Plaintiff's negotiated salary reflected a 26% increase from her previous salary with the School District.  (Id. ¶ 12.)

While serving as Assistant Superintendent, one of Plaintiff's responsibilities was to prepare and supervise the submission of the School District's Alternative Education Report.  (Id. ¶ 17.)  Additionally, Plaintiff was responsible for

---

Counterstatement of Material Facts, ¶ 9.)  To support her denial of the fact that she had full knowledge of the amount of compensation received by these employees, Plaintiff refers vaguely to her own sworn declaration offered in opposition to Defendants' motion for summary judgment.  For example, in her counterstatement Plaintiff emphatically insists that she "learned later that subordinates who worked under plaintiff's supervision were paid more than plaintiff; they were all minorities."  (Id.) (original emphasis.)  Plaintiff refers the Court to her declaration to support this assertion, but the declaration offers no support.  Furthermore, Plaintiff's assertion is directly contradicted by her sworn deposition testimony in numerous places, as she admitted throughout her deposition that she had requested, received, reviewed, and was familiar with the salary information for previous Assistant Superintendent and various subordinate employees at the time she negotiated her own contract.  (See, e.g., Def. Statement of Material Facts, Ex. B, Deposition of Deborah Mieczkowski ("Mieczkowski Dep.") at 31:16 - 33:15 (admitting knowledge of Dr. Tresa Diggs's salary when she served as Assistant Superintendent); id. at 40:14 - 43:9 (admitting knowledge of Dr. Joyce Royser's salary, a subordinate employee who earned a salary greater than Plaintiff); id. at 43:17-46:16 (admitting knowledge of Rosemary Woodyard's salary, a subordinate employee who earned a salary greater than Plaintiff).  Notably, Plaintiff admitted under oath that she knew about the salaries that these employees earned at the time she negotiated her own salary as Assistant Superintendent.

[2]  As with many of the facts that Defendants have asserted as undisputed, Plaintiff purports to admit in part, and deny in part, this fact.  But Plaintiff does not actually dispute anything about the fact itself; instead, she uses her response as an opportunity to assert – with practically no record support – that various minority employees with "less credentials" were paid more than she was.  As noted in footnote 1, supra, Plaintiff admits she was fully aware that certain subordinate employees earned more than her at the time she negotiated her contract as Assistant Superintendent.

preparing, supervising, and ensuring that certain Educational Assistance Program Reports were timely filed with the Pennsylvania Department of Education. (Id. ¶ 18.) These reports were important to the School District because they had an effect on certain funding that the School District received from the Commonwealth of Pennsylvania.

The Alternative Education Report was due to be filed on August 31, 2006, but it was not filed by this date; instead it was not filed until late November 2006.[3] (Id. ¶ 22.) The Educational Assistance Program Report was due to be filed in October 2006, but it too was not filed by this time. (Id. ¶ 23.)

During her brief tenure as Assistant Superintendent, Plaintiff's immediate supervisor was Dr. Tresa Diggs, the Superintendent of the School District. During the fall of 2006, Thomas Foust, a member of the School District's board of directors who served as chair of the finance committee inquired about the status of

---

[3] Plaintiff disputes this fact, but in doing so never actually disputes that the report was not submitted by the end of August 2006, when it was originally supposed to be filed. Indeed, Plaintiff does not dispute that the report was not filed until November 21, 2006, after School District staff worked together to finalize the submission. What Plaintiff really disputes is whether her failure to ensure that all components of the report were timely filed was entirely her fault and, regardless, whether the failure to submit the report timely ever placed the School District in jeopardy of losing state educational funding. Plaintiff does not adequately dispute that as Assistant Superintendent, she was responsible for overseeing the submission process for these reports. (Pl. Counterstatement of Material Facts, Ex. 2, Email from Jennifer Rockey to Dr. Mieczkowski dated November 30, 2006.) Even witnesses that Plaintiff subpoenaed on her own behalf indicated their understanding that ultimate responsibility for preparing the submitting the report rested with Dr. Mieczkowski. (See, e.g., Def. Statement of Material Facts, Ex. E, Deposition of Thomas Foust, at 30:11-22.)

the state funds that were dependent upon the Alternative Education Report.[4]  Mr. Foust approached the School District's business manager "periodically" to check on the status of the funding because "[n]obody really knew why it had not yet been released."  (Foust Dep. at 26:13-17.)  At some point during this time, Dr. Diggs reported to the board on the status of the grant and the fact that it was dependent upon the submission of the Alternative Education Report that Dr. Mieczkowski was responsible for filing.  (Id. at 27:12-23.)

Dr. Diggs also addressed the issue with Plaintiff directly.  At some point after the Alternative Education Report was supposed to have been filed, Dr. Diggs received an email from the Department of Education stating that the report had not been filed and that if the report was not submitted, the School District would not receive the $2 million grant that had been set aside.  (Def. Statement of Material Facts, Ex. C, Dep. of Dr. Tresa Diggs ("Diggs Dep."), at 75:17-25.)  Dr. Diggs testified during her deposition that after receiving this correspondence, she spoke with Plaintiff about the need to have report completed and she eventually enlisted the help of numerous School District employees to complete and file the report.

---

[4] According to Mr. Foust, the state funds allocated to the alternative education program amounted to $2 million in the form of a grant that had been set aside for the School District through the efforts of the former state representative in whose district the School Board is located.  (Def. Statement of Material Facts, Ex. E, Deposition of Thomas Foust ("Foust Dep."), at 24:25 - 26:11.)

(Id. at 76:2-23.)  In addition, a little more than a week after the report was

submitted, on November 29, 2006, Dr. Diggs summoned Plaintiff to a meeting.

(Def. Statement of Material Facts, ¶ 25; Pl. Counterstatement of Material Facts, ¶

25.)  The meeting was attended by Plaintiff, Dr. Diggs, and by Ms. Deloris Penn,

the School District's director of human resources and a defendant in this action.

At the meeting, Dr. Diggs attempted to give Plaintiff a letter that addressed Dr.

Mieczkowski's failure to submit the Alternative Education and the Educational

Assistance Program reports timely.  (Def. Statement of Material Facts, Ex. B,

Deposition of Deborah Mieczkowski ("Mieczkowski Dep."), Ex. 1.)  The letter's

stated purpose was "to remind [Dr. Mieczkowski] of the importance of following

through with the requirements of submitting necessary reports for [her] area of

responsibility."  (Id.)  Dr. Diggs represented that she had earlier forwarded

correspondence from the Department of Education to Dr. Mieczkowski attesting to

the fact that the Alternative Education Report was to have been filed in August

2006, that it had not been filed as of November 19, 2006, and that $2 million

would be withheld pending submission of the report.  (Id.)  Dr. Diggs also referred

Dr. Mieczkowski's attention to the fact that the Educational Assistance Program

report had not been filed as of November 21, 2006, even though it had been due in

October.  (Id.)  Dr. Diggs informed Plaintiff that the Department of Education had

represented to her that the School District stood to forfeit a total of $2.8 million if the reports were not filed. (Id.) After noting that the reports were eventually filed through a "team effort" of School District employees, Dr. Diggs stated her "expectation that this situation will never occur again. As the Assistant Superintendent for the School District of the City of York, I expect you to be more diligent and responsible in meeting schedules and deadlines." (Id.)

Plaintiff refused to accept the letter during the meeting, informed Dr. Diggs that she could provide her with the letter by giving it to Dr. Mieczkowski's secretary, and requested that she be provided with legal representation.[5] (Def. Statement of Material Facts, ¶ 28; Pl. Counterstatement of Material Facts, ¶ 28.) Plaintiff testified that neither Dr. Diggs nor Ms. Penn expressed any objection to Plaintiff's request for counsel and, in fact, acceded to it.[6] (Def. Statement of Material Facts, ¶ 29; Mieczkowski Dep. at 94:22 - 95:1.)

Following the aborted November 29, 2006 meeting, Dr. Diggs issued a

---

[5] The parties disagree about whether Plaintiff was discourteous during this meeting. Suffice it to say that both parties have supported their position on this issue with competing evidence and Plaintiff's conduct at the meeting remains a matter of dispute. Plaintiff's demeanor during the meeting is not material to resolution of Defendants' summary judgment motions.

[6] Notwithstanding her own testimony, Plaintiff purports to deny this fact, but her counterstatement is not only deficient, it is entirely nonresponsive. Plaintiff "denies" that Defendants assented to her request for counsel by arguing that "Plaintiff requested counsel because of the strange circumstances and defendants' actions." (Pl. Counterstatement of Material Facts, ¶ 29.) Whatever the basis for Plaintiff's request, the undisputed facts show that she was not denied counsel and Plaintiff herself attested to this fact during her deposition.

second letter to Plaintiff requesting a follow-up meeting.  (Def. Statement of Material Facts, ¶ 30.)  The correspondence requesting the follow-up meeting expressly indicated that Plaintiff could attend the meeting with counsel.  (Id.) Plaintiff attended the follow-up meeting with Dr. Diggs, Ms. Penn, and the School District's attorney in December 2006, and she was accompanied by her lawyer at this meeting.  (Id. ¶ 31.)  No formal action was taken by the School District against the Plaintiff as a result of the meeting.[7]  (Id. ¶ 32.)   The evidence shows that the School District never engaged in discussions or any other formal process regarding Plaintiff's potential termination or other discipline of any kind.[8]  (Id. ¶ 33.)

On or about December 1, 2006, five months after assuming the role of Assistant Superintendent, Plaintiff ceased working for the School District.  (Id. ¶ 14.)  Although December 1, 2006, was the last day that Plaintiff worked for the School District, her actual last date of employment was June 22, 2007, when she

---

[7] Once again, Plaintiff purports to deny this fact but fails to do so adequately.  Instead, Plaintiff argues obliquely that the meeting was "a surreptitious step in defendant's progressive disciplinary scheme to replace plaintiff with Wanda Dorn [one of Dr. Diggs's relatives]. . . . [D]efendants were clearly setting plaintiff up for future disciplinary actions to get rid of her." (Pl. Counterstatement of Material Facts, ¶ 32.)  The evidence offered in support of this claim, at most, suggests that the letters to Plaintiff were included in Plaintiff's personnel file to document areas of concern, and that in the area of progressive discipline documentation is important.

[8] Plaintiff denies this fact but provides no evidence to dispute it.

had exhausted all of her vacation and sick time, after advising the School District that she was retiring on medical disability.  (Id. ¶¶ 15-16.)

On or about March 27, 2007, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission, which was simultaneously filed with the Equal Employment Opportunity Commission.  Plaintiff commenced the instant action in this Court on June 20, 2007.  In her complaint, Plaintiff alleges that Defendants violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and under 42 U.S.C. § 1981, by discriminating against her on the basis of race.  In addition, Plaintiff claims that Defendants infringed her right to equal protection under the Fourteenth Amendment by treating her differently than other employees for no rational reason.  Plaintiff also alleges that Defendants violated her rights under the First Amendment of the United States Constitution by retaliating against her for requesting counsel during her meeting with Dr. Diggs and Ms. Penn.  Finally, Plaintiff has alleged that Defendants have violated "Pennsylvania Tort Law" by conspiring to discriminate against her on the basis of race.

Following the close of discovery in this case, Defendants filed the pending motion for summary judgment, seeking judgment as a matter of law on all of Plaintiff's claims.  The motion has been fully briefed and is ripe for disposition.

Because we find that Plaintiff has failed to satisfy the legal requirements of any of her claims, and has failed to develop or identify evidence in support of her claims, we will recommend that Defendants' motion for summary judgment be granted in its entirety.

## II.  STANDARD OF REVIEW

A district court may properly grant a motion for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 ©.   The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving

party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

# III.  **DISCUSSION**

A.  Plaintiff's Federal Claims for Unlawful Racial Discrimination Fail Because She Has Not Shown that She Was Subjected to an Adverse Employment Action that is Actionable Under Either Title VII or 42 U.S.C. § 1981.

Defendants argue that they are entitled to summary judgment on Plaintiff's claims for unlawful reverse racial discrimination because Plaintiff's has failed to adduce sufficient evidence to support her claims.  Specifically, Defendants contend that Plaintiff has failed to show that she has alleged, much less demonstrated evidence showing, that she suffered an actionable adverse employment action that may be redressed under either Title VII or 42 U.S.C. § 1981.  Defendants further argue that even if Plaintiff had identified actionable conduct, she has failed to make a prima facie case with evidence to show that race played a role in any of the conduct at issue in this case.  Following a thorough review of the record submitted by the parties, we agree.

Reduced to its essence, Plaintiff's complaint alleges that she was subject to unlawful reverse racial discrimination by being subject to disparate treatment in her employment that eventually led to her constructive discharge in December 2006.  In the introductory statement to her complaint, Plaintiff asserts that "she was unjustly disciplined, harassed and other [sic] discriminated against on account

of her color and race (reverse discrimination)." (Compl. at ¶ 1.) Plaintiff alleges that she was "treated differently than other similarly situated [non-Caucasian] employees" in several ways, including being excluded from certain executive sessions; being "disciplined" after being "wrongfully accused" of failing to submit reports timely; being "reprimanded . . . for being slightly late for a meeting"; given a smaller pay increase as Acting Assistant Superintendent than had been paid in the past; and receiving a lower rate of pay "than certain African Americans who held lower job classifications." (Id. at 33.) Plaintiff contends that this alleged discriminatory conduct caused her injury, manifesting in certain medical ailments. Plaintiff also appears to allege that as a result of the discrimination and the injuries she sustained, she was constructively discharged from her employment in December 2006.[9] (Id. ¶¶ 35, 46, 58.)

---

[9] In her brief opposing summary judgment, Plaintiff for the first time seems to argue that she was also subjected to a hostile work environment. Even read broadly, Plaintiff's complaint cannot reasonably be interpreted to have asserted a claim for a hostile work environment, and the Court does not find that such a claim has been properly presented in this action. Federal pleading standards do not allow a party "to raise new claims at the summary judgment stage. . . . Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of the facts set forth in the complaint." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314-15 (11th Cir. 2004); see also Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment") (citation omitted); Speziale v. Bethlehem Area Sch. Dist., 266 F. Supp. 2d 366, 371 n.3 (E.D. Pa. 2003) ("Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the [summary judgment] responsive papers"). We find that in her complaint Plaintiff articulated claims for disparate treatment and constructive discharge, but she did not properly assert a claim for a hostile work environment. Moreover, the evidence submitted by the

In cases brought by non-minority plaintiffs alleging reverse discrimination under Title VII or 42 U.S.C. § 1981, the Third Circuit directs courts to employ a slightly modified version of the familiar McDonnell-Douglas burden-shifting analysis to evaluate whether the claims survive summary judgment. See Iadimarco v. Runyon, 190 F.3d 151, 158 (3d Cir. 1999). Under this analysis, a plaintiff must first establish a prima facie case of discrimination, which requires that the plaintiff "present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based on a trait that is protected under Title VII [of the Civil Rights Act of 1964]." Id. at 161. "The evidentiary burden at this stage is rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent -- i.e., that discrimination could be a reason for the employer's action." Marzano v. Computer Science Corp., 91 F.3d 497, 508 (3d Cir. 1996). Nevertheless, while the race of the individuals responsible for an adverse employment decision "is certainly relevant, it is

_____

parties would not support such a claim in any event. To demonstrate a claim for a hostile work environment under Title VII, a plaintiff must show conduct that was severe and pervasive enough to create an objectively hostile or abusive work environment. Weston v. Pa., 251 F.3d 420, 426 (3d Cir. 2001). In determining whether a work environment was hostile or abusive for Title VII purposes, courts look at numerous factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; [and] whether it unreasonably interferes with an employee's work performance." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). Even if Plaintiff had properly alleged a hostile work environment claim, the evidence developed in this case fails to satisfy any of these factors.

insufficient to establish a prima facie case of discrimination without more."
Iadimarco, 190 F.3d at 156

Provided that the plaintiff makes this preliminary evidentiary showing, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for its adverse action. Id. at 157 (quoting McDonnell Douglas, 411 U.S. at 802). If the employer offers some evidence of a legitimate, non-discriminatory reason, to defeat summary judgment the plaintiff must then show that the stated reason was in fact pretext by pointing to "'some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. at 166 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

Accordingly, under the applicable standard, a plaintiff must first establish that she actually suffered a tangible, adverse employment action. The Supreme Court has defined a tangible, adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 749, (1998). An adverse employment action under this standard constitutes action by the employer that is serious and tangible enough to

alter an employee's compensation, terms, conditions, or privileges of employment.

Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997).

The record in this case is devoid of an actionable adverse employment action taken against Plaintiff. Defendants did not fire or demote Plaintiff. At no point were Plaintiff's benefits reduced or otherwise altered or compromised. Although Plaintiff attempts to hinge her claims, in large part, on the fact that she left her employment in December 2006 pursuant to her doctor's advice, the evidence of record fails to support her allegation that she was constructively discharged by any action or actions that Defendants took during the time Plaintiff worked in the School District. In the same vein, the instances of alleged discriminatory conduct that Plaintiff has alleged in this case do not qualify on their own or collectively as actionable adverse employment actions. For this reason alone Plaintiff's claims under Title VII and 42 U.S.C. § 1981 necessarily fail.

For example, Plaintiff has identified a single instance where she was admonished orally by Dr. Diggs for arriving late to a meeting that she herself was charged with leading. This admonishment is insufficient as a matter of law to constitute an adverse employment action that is actionable under Title VII or section 1981. Nothing in the record suggests that any aspect of Plaintiff's employment was altered or impaired as a result. Moreover, Plaintiff has not

shown that *similarly situated* employees were treated any differently in similar

situations. Plaintiff argues, in vain, that other employees were permitted to leave

meetings early or otherwise to violate the School District's leave requirements, but

these arguments are entirely unavailing. Plaintiff has not shown that similarly

situated employees were not similarly admonished by their supervisors for

showing up late to meetings they were responsible for organizing.

We also do not find that the letters from Dr. Diggs regarding Plaintiff's

failure to ensure the timely filing of various reports represent adverse employment

actions that may be redressed under Title VII or 42 U.S.C. § 1981. Although

Plaintiff takes great pains to argue that these letters were unjustly issued, that the

dilatory filing of the reports was outside of her exclusive control due to the

failures of a negligent third-party provider, and that the letters were part of a

nefarious scheme intended to lead to her eventual ouster, the evidence – taken in

the light most favorable to her – does not support her view that the letters

represented adverse employment actions. The Third Circuit has held that negative

employment evaluations, taken alone, do not constitute adverse employment

actions when they do not result in any material change to the employee's terms

and conditions of employment. Weston v. Pa., 251 F.3d 420, 431 (3d Cir. 2001).

Indeed, in Weston, the Third Circuit found that two written letters of reprimand

that were placed temporarily in an employee's personnel file were insufficient to constitute a tangible employment action because the letters did not cause a material change to the plaintiff's terms and conditions of employment. Id. The result should be no different in this case.

Even if Plaintiff could show that the single admonishment and two letters from Dr. Diggs qualified as actionable adverse employment actions, she has failed to come forward with evidence that would be sufficient to show that the actions were taken as a result of racial discrimination. Yet, that is precisely what she needed to show in order to establish a prima facie case. See Iadimarco, 190 F.3d at 161 (plaintiff alleging reverse racial discrimination must present "sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based on a trait that is protected under Title VII.").

In order to support her theory that her treatment by School District officials was racially discriminatory, Plaintiff places great weight on the fact that a single member of the nine-member school board made a comment to Defendant Penn to the effect that Ms. Penn was disproportionately disciplining African Americans and that she should go "after some whites." (Compl. ¶ 26.) Plaintiff offers this single statement as the linchpin to her entire discrimination claim, as she theorizes

that "Penn . . . pursued plaintiff as a way to satisfy the District's desire to go after whites . . . choosing plaintiff as a target." (Id.)  However, there is no evidence in the record even suggesting that Deloris Penn took any steps to discipline Plaintiff or that she was instrumental in encouraging Dr. Diggs to reprimand Plaintiff for the tardy reports.  Similarly, there is no evidence – aside from Plaintiff's rank speculation – that Dr. Diggs was motivated in any way by a comment uttered by a single board member.  Thus, far from evidence that "shows a clear implementation of that plan," the evidence on which Plaintiff relies to demonstrate discrimination is speculative, extremely tenuous, and fails to suggest a nexus between a single board member's impertinent comment and Dr. Diggs's action of reprimanding Plaintiff for failing to discharge of her job responsibilities.[10]

Plaintiff also argues that she was paid less than Dr. Diggs earned while serving as Assistant Superintendent, and that she was paid less than some other employees who were subordinate to Plaintiff, and suggests that this pay disparity should be considered either discriminatory or evidence tending to suggest that other actions taken against Plaintiff were discriminatory.  We find this argument

_____

[10]  Again, the School District took no formal action against Plaintiff and Plaintiff suffered no tangible adverse employment action as a result of Dr. Diggs issuing her a letter reminding her of her responsibilities as Assistant Superintendent and expressing her expectation that future funding reports would be filed timely.

similarly unavailing under the undisputed evidence submitted by the parties.

Although Plaintiff negotiated her own salary after reviewing salaries for prior administrators and employees of the School District, and although Plaintiff never complained about her salary at any point during her employment with the School District, Plaintiff suggests that she was discriminated against unlawfully on the basis of race by being paid less money than Dr. Diggs received when she was Assistant Superintendent, and by being paid less than certain of Plaintiff's subordinate employees. Yet, Plaintiff testified during her deposition that she negotiated her own contract when she became Assistant Superintendent in the summer of 2006. (Mieczkowski Dep. at 29:18-25.) Plaintiff admitted that she was provided with documents showing that Dr. Diggs earned more when she served as Assistant Superintendent than Plaintiff herself would earn, and Plaintiff agreed to the salary that she negotiated on her own behalf.[11] Plaintiff also admitted that she agreed to her salary after reviewing salary information for other employees, including African American employees who were subordinate to her who earned more than she did. In contrast to the foregoing, Plaintiff has come

_____

[11] Whereas the record contains no evidence to show that Dr. Diggs's salary was based on impermissible racial considerations, the record contains substantial information showing that the School District's salary structure took into account many entirely legitimate factors, including years of service and professional certifications.

forward with no evidence to suggest that the School District discriminated against her by paying her less money on the basis of race, other than her own unsupported assertions that subordinate African American employees with "less credentials than plaintiff" earned more money than her. (Pl. Counterstatement of Material Facts, ¶ 10.) Plaintiff has failed to identify evidence to support her claim that she was discriminated against in the pay she received; indeed, the evidence tends, if anything, to discredit her claims.

In sum, upon a thorough review of Plaintiff's complaint and the evidentiary record submitted by the parties on summary judgment, we find that Plaintiff has failed to make out a prima facie case of reverse racial discrimination. She has failed to identify any actionable adverse employment action that was taken against her during her employment – a fundamental prerequisite of a discrimination claim. Even assuming that the limited instances and conduct that Plaintiff has identified as discriminatory could have supported a claim for racial discrimination under Title VII and section 1981, Plaintiff has failed to identify evidence showing that race played any part in her treatment by Defendants. Accordingly, it will be recommended that Defendants' motion for summary judgment on Plaintiff's claims for racial discrimination under Title VII and 42 U.S.C. § 1981 (counts 1 and 2 of the complaint) be granted.

B.    <u>Plaintiff's Equal Protection Claim Fails as a Matter of Law.</u>

Plaintiff has also brought a claim under 42 U.S.C. § 1983 alleging that Defendants violated her right to equal protection guaranteed by the Fourteenth Amendment to the United States Constitution by treating her differently than similarly situated employees for no rational reason.

The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated individuals be treated alike.  <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  Two independent legal theories exist upon which a plaintiff may predicate an equal protection claim: the traditional theory and the class-of-one theory. The traditional theory protects a plaintiff from discriminatory treatment based on membership in a protected class such as race. <u>See, e.g.</u>, <u>id.</u>; <u>McLaughlin v. Florida</u>, 379 U.S. 184, 192 (1964).  To assert a protected-class claim, the plaintiff must demonstrate that (1) he or she is a member of a protected class and (2) the government treated similarly situated individuals outside of the protected class differently. <u>See</u> <u>Oliveira v. Twp. of Irvington</u>, 41 F. App'x 555, 559 (3d Cir. 2005) (observing that a prima facie case under the Equal Protection Clause requires plaintiffs to prove membership in "a protected class and that they received different treatment than that received by other similarly-situated individuals"); <u>Keenan v. City of Phila.</u>, 983 F.2d 459, 465 (3d Cir. 1992). Under

this theory a plaintiff "must prove the existence of purposeful discrimination" by defendants. <u>Keenan</u>, 983 F.2d at 465.

In contrast, under the class-of-one theory, a plaintiff may advance an equal protection claim absent membership in a protected class if the plaintiff shows irrational and intentional differential treatment when compared with similarly situated individuals. <u>See</u> <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000). This theory allows a plaintiff to assert an equal protection claim regardless of protected class when the government irrationally treats the plaintiff differently than similarly situated individuals. <u>Id.</u> at 564; <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 239 (3d Cir. 2006). To assert a class-of-one claim, Dr. Mieczkowski must demonstrate that: (1) Defendants treated her differently from others similarly situated; (2) Defendants did so intentionally; and, (3) there was no rational basis for the difference in treatment. <u>Hill</u>, 455 F.3d at 239.

Plaintiff has not, and indeed could not, have brought her claim under the traditional theory because she is not a member of a protected class for purposes of race. Instead, she has brought her claim under the so-called "class of one" theory. For many of the reasons set forth in the discussion rejecting Plaintiff's claims for racial discrimination, we find that Plaintiff has also failed to adequately support her claim for equal protection.

Plaintiff has failed to show that she was treated differently than other *similarly situated* employees. Although she complains generally that various African American employees were treated differently, and better, than she was in certain respects, Plaintiff has failed to show that any of these employees were similarly situated to her in their employment capacities. As discussed above, Plaintiff has also failed to support these general claims of differential treatment with sufficient evidence to support the allegations.

Although Plaintiff has argued that she was treated differently than Dr. Diggs in terms of their respective salaries as Assistant Superintendent, she has offered no evidence to show that the differential in pay was not rational. Plaintiff concedes that she was provided access to, and reviewed, salary information for Dr. Diggs (as well as several other employees) during the course of negotiating her own agreed-upon salary. Furthermore, the evidence shows that the School District's salaries and pay increases were tied to numerous factors such seniority, professional certifications, and changes in salary structure dictated by budgetary concerns. Plaintiff has simply offered no evidence to discredit these valid considerations, and she has offered nothing to show that her treatment in pay or in any other aspect of her employment was either irrational or otherwise unlawful. Because Plaintiff has failed to support her claim for an equal employment

violation under a "class-of-one" theory, we will recommend that Defendants'

motion for summary judgment on this claim be granted.

C.     Plaintiff Has Failed to Support Her Claim for First Amendment Retaliation.

Plaintiff also brings a claim for retaliation for exercising her rights under the

First Amendment to the Constitution.  In short, Plaintiff contends that Defendants

retaliated against her after she requested the assistance of counsel prior to

accepting Dr. Diggs's November 29, 2006 letter articulating her expectations that

Plaintiff take greater care to discharge her responsibilities as Assistant

Superintendent with respect to ensuring the timely submission of certain

educational reports to the Department of Education.

The Third Circuit Court of Appeals has instructed that courts should follow a

three-step burden-shifting process when examining a public employee's § 1983

claim of retaliation for engaging in activity protected under the First Amendment.

Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005).  "First, the employee

must show that the activity is in fact protected. Second, the employee must show

that the protected activity 'was a substantial factor in the alleged retaliatory action.'

Third, the employer may defeat the employee's claim by demonstrating that the

same adverse action would have taken place in the absence of the protected

conduct." Id. (citations omitted). When there is more than one defendant, the employee must show that each defendant individually participated or acquiesced in each of the alleged constitutional violations. C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997).

In this case we assume, for purposes of this report, that the fact that Plaintiff requested to have counsel present at a meeting with her supervisor is an activity protected under the First Amendment. Nevertheless, we find that Plaintiff's claim for retaliation necessarily fails at step two. This stage of the analysis actually involves two sub-steps. Smith v. Central Dauphin Sch. Dist., 2009 U.S. App. LEXIS 26996, at *23 (3d Cir. Dec. 11, 2009). First, courts must examine the complained of acts and determine whether they are sufficient to give rise to a First Amendment retaliation claim. Id. In the Third Circuit, the test for determining whether an alleged act of retaliation is sufficient to give rise to a retaliation claim is whether the act is "sufficient to deter a person of ordinary firmness from exercising [her] First Amendment rights." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006). The threshold for meeting this standard is minimal, as the only thing the employee must show is that the acts attributed to the defendant are more than de minimis. O'Connor v. City of Newark, 440 F.3d 125, 127-28 (3d Cir. 2006). Even when

conduct falls below that minimum threshold and is not by itself actionable, a plaintiff may still satisfy the test by showing a campaign of harassment that is substantial due to its cumulative impact.  Brennan v. Norton, 350 F.3d 399, 419 n.16, 422 n.17 (3d Cir. 2003); Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000).  Second, courts must examine whether the employee's speech was a substantial or motivating factor for the alleged acts.  Suppan, 203 F.3d at 236.  The Third Circuit has observed that to establish the requisite causal connection a plaintiff typically must prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link.  Smith, 2009 U.S. App. LEXIS, at *23.  In the absence of that proof, the plaintiff must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation.  Lauren v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Judged against these standards, Plaintiff's claim for retaliation fails.  Plaintiff has not supported her claim that Defendants retaliated against her for requesting counsel.  To the contrary, the record shows that Defendants took no action against Plaintiff as the result of her request for an attorney but instead acceded to her request.  We perceive nothing in the record to suggest conduct directed at Plaintiff that would conceivably deter a person of ordinary firmness from exercising her

First Amendment rights, and the conduct in this case had no such effect upon Plaintiff. When Plaintiff informed Dr. Diggs and Ms. Penn that she did not want to proceed with the meeting on November 29, 2006, Defendants suspended the meeting. The record shows that Defendants honored Plaintiff's request to have counsel present at any future meeting. Plaintiff admitted these facts during her deposition, and offered no testimony or other sufficient evidence to the contrary to show that she was somehow retaliated against.

Although Plaintiff contends in her declaration submitted in opposition to Defendants' motion for summary judgment that she was "blind sided" by a second letter that was issued to her, Plaintiff has failed to point to facts that would support her theory that this second letter or follow-up meeting was retaliatory. Indeed, the record supports Defendants' assertion that they scrupulously honored Plaintiff's request to have a lawyer present, and that they took steps to arrange for a meeting with Plaintiff and her counsel as the result of her request.

Plaintiff complains that she was constructively discharged from her employment, and appears also to predicate her claim for retaliation upon this theory. But the evidence simply does not support Plaintiff's constructive discharge theory, and nothing else in the record suggests that Defendants took any action in retaliation for Plaintiff's request for legal counsel. Given this lack of evidence to

support Plaintiff's claim, we will recommend that Defendants' motion for summary

judgment on Plaintiff's First Amendment retaliation claim be granted.

     D.     <u>Plaintiff Has Failed to Support Her Claim for Civil Conspiracy Under Pennsylvania Law.</u>

Based on nothing more than "information and belief" that they were

"motivated by unlawful racist hatred," Plaintiff alleged that Defendants Diggs and

Penn conspired to discriminate against her on the basis of race.  (Compl. ¶ 54.)

Plaintiff has failed to support these allegations with any competent evidence and

we therefore will recommend that the Court enter judgment in Defendants' favor

on Plaintiff's state-law conspiracy claim.

To state a cause of action for civil conspiracy under Pennsylvania law, a

plaintiff must plead: (1) a combination of two or more persons acting with common

purpose to do an unlawful act or to do a lawful act by unlawful means or for an

unlawful purpose; (2) an overt act done in pursuance of the common purpose; and

(3) actual legal damages.  <u>Strickland v. University of Scranton</u>, 700 A.2d 979, 987-

88 (Pa. Super. 1997).  Furthermore, a plaintiff must prove that the alleged

conspiring parties acted with malice or the intent to injure the plaintiff.  <u>Id.</u> at 988.

A plaintiff may not rely on mere conclusory allegations of conspiracy, but instead

must make particularized allegations to describe the period of the conspiracy, the

object of the conspiracy, and the steps taken in furtherance of the conspiracy.

Grose v. Procter & Gamble Paper Prods., 866 A.2d 437, 441 (Pa. Super. 2005).

Plaintiff's complaint flouts all of these initial pleading requirements, and she has failed to develop evidentiary support for her amorphous claim that Defendants Diggs and Penn conspired to discriminate against her on the basis of race. Instead, the following constitutes the entirety of Plaintiff's brief in opposition to Defendants' arguments in favor of summary judgment on the conspiracy claim:

> Plaintiff can state a state law civil conspiracy claim against the Defendants. Again, Plaintiff points to her Declaration and all of the evidence above which she relied [sic] in making out her discrimination claim as setting forth the essence of the Defendants' actions and the injuries to Plaintiff. Plaintiff points to their [i.e., Diggs and Penn] close relationship, share [sic] motives, and mutual benefit of their close relationship and the value of having Plaintiff out of the way. For all of the foregoing reasons, Plaintiff submits she has met her summary judgment burden, and Defendants' motion must be denied.

(Doc. 50, at 18.) Review of her declaration and "all of the evidence above" compels us to find that Plaintiff has fallen far short of the requirements that she had to meet to sustain a claim for civil conspiracy under Pennsylvania law. The record is barren of evidence to show that there was ever an agreement or meeting of the minds between Defendants Diggs and Penn, or to support Plaintiff's theory regarding the object of the conspiracy, or that either of these defendants took overt

30

acts in furtherance of the alleged conspiracy, or that the defendants had the requisite intent necessary to establish a conspiracy claim, or that either of the defendants had malice and intent to injure Plaintiff. For these reasons, we will recommend that the Court grant Defendants' motion for summary judgment on Plaintiff's state-law civil conspiracy claim.

## IV.   **RECOMMENDATION**

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment (Doc. 39) be granted.

> The Parties are further placed on notice that pursuant to Local Rule 72.3: Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

***S/MARTIN C. CARLSON***
Martin C. Carlson
United States Magistrate Judge

Dated: December 21, 2009