IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH M. MIECZKOWSKI | : | NO. 07-1102 |
| | : | |
| Plaintiff | : | (Judge Conners) |
| VS. | : | |
| | : | (Magistrate Carlson) |
| YORK CITY SCHOOL DISTRICT | : | |
| DELORIS PENN, AND | : | |
| TRESA DIGGS, | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants | : | |

PLAINTIFF'S OBJECTIONS TO THE REPORT AND
RECOMMENDATION OF MAGISTRATE CARLSON

This case was originally filed on June 20, 2007, *Docket Entry #1*. A case management plan was entered on August 27, 2007, Id #8. Motion practice was underway. On November 28, 2007, Id #8, the Court denied defendants motion to dismiss (later reinstating plaintiff's Title VI claim) Id. #21 on February 1, 2008. On February 14, 2008 defendant answered the complaint Id #22. Additional motion practice and discovery followed. On February 13, 2009 defendants filed their motion for summary judgment. Id #39. On March 3, 2009 the defendants filed a motion to "file a statement of facts" which they consequently filed on March 5, 2009. Id #45. The defendants statement of facts (as per L.R. 56.1 consisted of 36 paragraphs written on 9 pages). A number of these paragraphs contained non material

1

facts.

On October 1, 2009 the Court referred the case to newly appointed Magistrate Judge Carlson for "full pretrial management". Docket Entry #53. There was no disposition on the pending summary judgment motion. On December 21, 2009 Magistrate Judge Carlson issued a Report and Recommendation (hereinafter "R&R") recommending that this Court grant defendants motion for summary judgment. The R&R is 31 pages long and contains 11 footnotes, many of which are lengthy. This objection is in opposition to M.J. Carlson's R&R because it contains numerous factual errors and because it is also violates the applicable standard of review. The R&R also arguably contains a number of law errors as applied to the facts.

## I.    Factual Background

Plaintiff incorporates here the defendants "Statement of Material Facts, plaintiff's "Counterstatement of Undisputed Facts" and all of the exhibits appended to the defendants' motion for summary judgment (and accompanying brief) and plaintiff's brief and exhibits in opposition thereto. In defendants' brief in support of their motion for summary judgment they attached a number of depositions and the complaint. The defendants' affixed no declaration or affidavits. Plaintiff in response, also attached a number of exhibits including her declaration. All of these documents are incorporated

herein.

What occurred in the factual background of this case was set down in the "Factual and Procedural History" section of "Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment") *See Docket entry #50*. In this document *(#50)* appears the factual recitation of what occurs in the case below. The citations here are to plaintiff's Declaration, Counterstatement, Exhibits, and similar documents which were relied upon by the M.J. in his R&R.

## II.    Factual and Procedural History

On or around February 2004, Plaintiff began working for Defendant York City School District as the Supervisor of Curriculum and Instruction. In July of 2005, Plaintiff was appointed to the position of Acting Assistant Superintendent.    *Declaration of Plaintiff, ¶4*.    In December of 2005, Plaintiff attempted to discipline the high school principal, who was an African American, but she was warned by the Superintendent, Defendant Diggs, who is also an African American that the board president, African-American Jeffrey Kirkland would not like it.    *Response to Statement of Material Facts, ¶13*.    Moreover, Plaintiff received a lower salary than her black predecessors as well as even some of her subordinates in the district. *Response to Statement of Material Facts, ¶'s 7-11*.

In July of 2006, Plaintiff was promoted to the position of Assistant Superintendent of the York City School District. Plaintiff's Declaration, ¶4. On October 11, 2006, Plaintiff attended an executive session where members of the York City School Board were present. *Complaint ¶25*. At the session, Beverly Atwater, an African-American York School District Board member publicly directed the defendant Penn, the Director of Human Resources that she was always going after the blacks and stated "it's about time you went after some whites." Thereafter, Penn then pursued the Plaintiff (who is a Caucasian) as a way to satisfy the District's desire to go after whites. Response to Statement of Material Facts, ¶13.

On November 30, 2006, the Defendant Diggs issued a written reprimand to the Plaintiff for failing to submit a report, even though the circumstances were totally beyond the Plaintiff's control and Diggs knew that. The Defendants contend significantly that Plaintiff's tardiness in submission of the report as costing the district significant funds when, in reality, it was not within her responsibility or her ability and there was never any loss or cost to the District. Response to Statement of Material Facts, *¶'s 17-34.* On or around December 1, 2006, Defendant Diggs issued a second written discipline letter from the defendant York County School District alleging insubordination because the Plaintiff requested a chance to secure

legal advice in dealing with the first discipline letter.  Response to Statement of Material Facts, ¶'s 25-33.

The Plaintiff alleges that she was subjected to a continuing pattern of disparate and hostile treatment throughout her employment, as reflected in the above matters, as well as her Declaration.  As a result of the actions of the Defendants, Plaintiff endured undue emotional distress that caused her to experience consequential physical ailments that resulted in her doctor ordering her not to return to work after December 1, 2006.  Response to Statement of Material Facts, ¶35.   In addition, despite the fact that Defendants contend that they expected Plaintiff to return to her position, Plaintiff's things were packed and ready to move out within days of her sick leave, and her position was filled by a woman who is a relative of Superintendent Diggs.  Response to Statement of facts, ¶'s 33-36.

### III.    Standard of Review

"The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  He or she can discharge that burden by "showing…that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp v. Catrett, 106 S.Ct. 2548 (U.S. 1986).*

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, *842 F.2d 689 (3d.Cir.1988).* Material facts are those which will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc*, *106 S.Ct. 2505, 2510 (U.S. 1986).* In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co., 862 F.2d 56 (3d.Cir 1988). (Emphasis added).*

The Magistrate Judge does not adhere to the Standard of Review. It must be borne in mind that this is a race based case.

The M. J. regularly either misapprehends the disputed facts in this case, or erroneously interprets them or both. The examples are numerous. And each of the following examples of the M.J's. errors either demonstrate inordinate time and deference paid to the facts in this case  from the defendants perspective or are, where they indicate disputed disagreement by the plaintiff, ignored by the M. J. This method of analysis is o.k. for and advocate but they do not belong in this litigation as law issues. A more or less classic example is the issue of salaries.

At no place in her complaint did plaintiff imply or complain that any of the defendants ever withheld or meant to, or in fact did, manipulate

6

information about the amount of compensation that plaintiff's subordinates were receiving at the time plaintiff was negotiating her salary for the position of Assistant Superintendent. What plaintiff is emphasizing is the probative reality that the defendants and administration did, in fact, or at least appeared in fact, pay black managers more than White management. There are and were reasons to some extent why they admitted reasons that some of these "subordinates" were, or could, be paid more, such as seniority. But the pattern and circumstances were indications of discrimination.

Indeed, no one i.e. in this litigation disputes that plaintiff's subordinates (all Black) were paid more than plaintiff was. Whether plaintiff knew in finite or minute detail whether her subordinates were paid significantly more than her, precisely before, or precisely during, or even after she was forced to terminate her employment is not worth disputing or discussing to the exercise degree that the M.J. does. It is material as a discrimination claim in this case. The Magistrate Judge takes these facts beyond their importance and somehow this issue becomes (unless one reads the complaint) some sort of discrimination claim. It is not. But it is circumstantially probative of the subjective intent and racial frame of reference employed by the defendants. *See Jackson v. University of Pittsburgh, 826 F.2d 230. 236 (3d Cir 1987).*

> "in today's climate of public opinion, blatant acts of discrimination, the true smoking guns can easily be identified, quickly condemned and often rectified in the particular settings where they occur. Much of the discrimination that remains resists legal attack exactly because it is so difficult to prove. Discrimination victims often come to the legal process without witnesses and with little direct evidence indicating the precise nature of the wrongs they have suffered. That is one of the reasons why our legal system permits discrimination plaintiffs to prove their case by direct or circumstantial evidence".

Here, the smoking gun is not that plaintiff's subordinates were paid more, rather it's the fact that she was forced (take it or leave it) to accept a reduced salary with a 5% increase as opposed to 10% which had been previous practice. The relative lower level of her salary is the issue Deb Mieczkowski, a highly educated person of impeccable character wishes to make. She never "attempts to create some ambiguity as to when she became aware of the allegedly unequal pay that she received relative to both previous Assistant Superintendents and employees who were subordinate to her", *R & R pg 2 footnote 1.* She is in no way deservant of this high subjective journey into her thoughts.

To begin, while plaintiff is as capable of making an error or confusing facts as is any witness in any litigation, or as is any judge/or lawyer, she was dealing with a plethora of facts and was only explaining that she learned more of the details of salary as the desire to acquire the promotion went along. She has never claimed, and it has never been an allegation in this

8

litigation, that she took the Assistants position with her eyes closed. She didn't. The page the M.J. spends on this issue is out of proportion to the facts and evidence as pled. She has never, contrary to the quite erroneous implications in the R & R claimed she was hoodwinked in some way. Further, in complete contradiction to the Magistrate Judges' footnote language, there is nothing "allegedly" about the "allegedly" unequal pay…she received relatives the employees that were subordinate to her. The clear, unabashed and undisputed facts are that they were paid more. The M.J. treats this allegation as if she was speculating about this thing and that the defendants disagree.

While in fairness to the defendants there may be arguable reasons for salary in equities, it's a jury question that goes back to plaintiff's low level entry salary and the reasons for that which are of value in this case – having nothing to do with when plaintiff learned of the other salaries as if to imply that she waived something as has no race based case because of it. The point is plaintiff was denied the opportunity to come on under the same conditions as her predecessors on account of her color, white. What is "notable" is not that the Magistrate Judge concludes that "Plaintiff admitted under oath that she knew about the salaries that these employees earned at the time she negotiated her own salary as Assistant Superintendent" but that the M.J.

attached significance to this erroneous bootstrapped holding as if plaintiff took the job under these conditions and cannot now complain. Does that mean that the defendants are not, or were not, racist, or that plaintiff agreed to be subjected to a racist decision or decisions? Of course not. What it means is that there is a decision for the jury.

Similar difficulties arise with the M. J.'s *footnote #2 on page 3* of his R & R. The entire reference by the M.J. betrays the obvious failure to comply with the applicable standard of review. In a generalized attack on plaintiffs Counter Statement the "asserted as undisputed" facts that the M.J. (once more returning to salary negotiations) makes reference to, plaintiffs "admitted in part denied in part" assertion of undisputed facts, without pointing out a single reference to another example before returning once more to the salary issue. Its almost as if the M.J. searched for a way to criticize plaintiff returning again and again to what became an overworked issue. The fact is plaintiff's reference to her subordinates being paid more was never disputed. Without returning to references to the appropriate standard of review, i.e. *Jackson supra* and also see, *Aman v. Kort Furniture Rental Corp. 85 F 3d 1074*, *Antol v. Perry*, *142 F.3d 639 (3d Cir. 1998),* it is plain that the M.J. sees this case through the eyes of the defendants and

indeed singles out factual references (even if erroneously) to support that performance.

Perhaps the best example of the M.J's. misapprehension of facts and, or, tendency to view them from the defendants' perspective is the issue surrounding the facts having to do with the planned suspension of plaintiff for failure to see that an Alternative Education Report was submitted to the Pennsylvania Department of Education. This Court has a responsibility to review the Magistrate Judges Report de novo. It is impossible not to clearly see that M.J. Carlson views a key area of material disputes between the parties from the defendants' perspective and argues as an advocate, not as a judge reserving jury questions for the jury. The matter appears almost as an analysis of a criminal case erroneously disregarding the nature of a civil case.

Deborah Mieczkowski was set-up pretexually and abused on her purported responsibilities to do a report that was due to the Pennsylvania Department of Education. She could not do that report without input from a defendant favored vendor. In detail, see plaintiff's Declaration ¶7; see plaintiff's Counterstatement of Material Facts ¶9, ¶17, Id ¶18, Id ¶19, Id ¶20, Id ¶21, Id. See ¶22, Id ¶23, Id ¶24.

11

In total contrast to the M. J.'s extensive discussion on the issue of "adverse employment action" the events during the Fall of 2006 qualify as jury questions on evidence of adverse actions against the plaintiff. The M.J. clearly makes a choice to simply disregard the plaintiff's evidentiary offerings. It is noticeable that the M.J. leaves out an incredibly crucial fact such as the letter of reprimand being placed in plaintiff's file in his lengthy but un-cited characterization the plaintiffs record, and evidence, avoiding the intense pressure and harassment for facing a patently absurd litany of abundant pretexual actions setting plaintiff up for discipline over a so-called "Report" the defendants knew she could not complete. The M.J. selective cites here and ignores there the disagreement between the parties that only a jury could resolve.

These defendants drove plaintiff nuts. To a Doctor level, an educated person, highly placed professional, a letter of reprimand in a file is not just career damaging or destroying it can be psychologically devastating. By not recognizing the facts that under the circumstances plead as part of this case, plaintiff suffered a constructive discharge based upon a doctor's orders. The M.J. improperly suggests non-suiting the plaintiff.

For the above reasons this Court is respectfully requested to reject the Magistrate Judges R & R.

Respectfully Submitted,


By:    /S/Don Bailey Esquire
       4311 N. 6th Street
       Harrisburg, Pa 17110
       717.221.9500

## <u>CERTIFICATE OF SERVICE</u>

I, Don Bailey do hereby certify that on this **25th day of January 2010**

I served a true and correct copy of ***Plaintiff's Objections to the Magistrate***

***Report and Recommendation*** upon the Defendants to the attorney listed

below by ECF:


CHRISTOPHER CONRAD, ESQUIRE
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
HARRISBURG, PA 17108



Respectfully Submitted,


By:        <u>s/Don Bailey, Esquire</u>
4311 N. 6th Street
Harrisburg, PA  17110
(717) 221-9500